**In re LEHMAN BROTHERS MERCHANT BANKING PARTNERS IV L.P., Relator.**

No. 05–09–00508–CV.

Court of Appeals of Texas, Dallas.

July 30, 2009.

T. Ray Guy, Robert S. Velevis, Sunny J. Thompson, Weil, Gotshal & Manges LLP, Dallas, TX, for Relator.

Thomas F. Lillard, Hinton & Williams, LLP, Dallas, TX, for Real Party In Interest.

Before Justices MORRIS, FRANCIS, and MURPHY.

## OPINION

Opinion By Justice MORRIS.

In this original proceeding, the question before us is whether the trial court abused its discretion in denying relator's motion to dismiss based on a forum-selection clause contained in a limited partnership agreement. Because we conclude it did err, we conditionally grant the writ of mandamus.

Real parties in interest, Ray C. Davis, John W. McReynolds, and Kelcy Warren, are investors and limited partners in Lehman Brothers Merchant Banking Partners IV L.P., the relator in this cause. The investors filed suit in district court in Dallas seeking, among other things, dissolution of the partnership. The partnership moved to dismiss the investors' claims based on a forum-selection clause in the agreement that created the partnership. The trial court denied the motion to dismiss.

To be entitled to mandamus relief, the partnership must show both that the trial court abused its discretion and that it has no adequate appellate remedy. *See In re AutoNation, Inc.*, 228 S.W.3d 663, 667 (Tex.2007) (orig. proceeding). Mandamus relief is appropriate to enforce a forum-selection clause when the trial court has abused its discretion. *See id.*

The forum-selection provision reads, in part, as follows:

Any action or Proceeding against the parties relating in any way to this Agreement may be brought and enforced in the courts of the State of New York ... or the courts of the State of Delaware, ...; *provided* that with regard to any actions brought against the General Partner, the Advisor, or their Affiliates and employees, such jurisdic-

tion shall be exclusive unless otherwise expressly agreed by the General Partner.

(emphasis in original). The parties disagree on whether the above provision, specifically the exclusive jurisdiction clause beginning with "provided that," applies to lawsuits filed against the partnership. The partnership argues suits against it must be brought either in New York or Delaware because the agreement's definition of "Affiliate" conclusively establishes the partnership is an affiliate of the general partner. The investors respond that the forum-selection provision only applies to "parties" to the agreement as expressly stated in the first clause. They argue that, even if the partnership is technically an affiliate of the general partner under the agreement, the forum-selection provision does not apply to the partnership because it is not and can never be a party to the agreement. They also dispute the partnership's contention that it is an affiliate of the general partner.

■ Under Delaware law, the primary rule of contract construction, known as the clear meaning rule, applies when the parties have created an unambiguous, integrated written statement of their contract. *City Investing Co. Liquidating Trust v. Continental Cas. Co.*, 624 A.2d 1191, 1198 (Del.1993). If there is no ambiguity, the contract is construed according to the ordinary and usual meaning of its terms. *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 628 (Del.2003).

■ After examining the agreement and analyzing the arguments presented, we conclude the forum-selection provision unambiguously requires lawsuits against the partnership relating to the agreement to be brought in either New York or Delaware. We agree with the investors' general contention that under Delaware law the exclusive jurisdiction clause beginning with "provided that," is a limitation on, and must be read in reference to, the language describing the scope of the provision. *See In re Explorer Pipeline Co.*, 781 A.2d 705, 719 (Del.Ch.2001).[1] We disagree, however, with the investors' application of this principle to the provision before us.

The forum-selection provision sets forth the jurisdictional parameters for New York and Delaware courts. The first clause permits New York and Delaware to exercise non-exclusive jurisdiction over suits brought against parties to the agreement. The second clause, however, confers exclusive jurisdiction on New York and Delaware for suits filed against those specified in the clause. Thus, in addition to suits against the general partner and advisor, suits against the affiliates and employees of either of these two entities must be sued in Delaware or New York. The forum-selection provision simply does not require the affiliates and employees of the general partner and advisor to be also a party to the partnership agreement before the exclusive jurisdiction clause applies to them. In fact, the investors' construction would effectively render the inclusion of the term "employee" meaningless because there is nothing in the agreement to suggest employees of either the general partner or advisor are or would ever become parties to the agreement.[2]

---

**1.** The partnership agreement states: "This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Delaware, without regard to conflict of laws principles."

**2.** To support their position, the investors cite section 3.1(h) of the agreement, which requires "Lehman Brothers" entities, including the general partner and its affiliates, to invest at least $250,000 into the partnership thereby becoming limited partners and parties to the agreement. Section 3.1(h), however, does not

The investors also contend the forum-selection does not apply to the partnership because it is not an "Affiliate" of the general partner. The investors offer several arguments to support this contention. They first assert that whenever the agreement refers to the partnership, it does so specifically and distinctly and not indirectly as an affiliate of the general partner.[3] Moreover, the investors argue that if the partnership is always an affiliate of the general partner, certain provisions of the agreement become nonsensical and redundant. By way of example, they contend such a construction would require the partnership to reimburse itself for certain expenses under section 6.3(a), shield the partnership from liability to itself under section 4.3(a), and permit the general partner to transfer its interest in the partnership to the partnership under 8.1(a). Unlike the forum-selection provision, however, all of these sections specifically reference the partnership in relation to the general partner and its affiliates. It is not reasonable to read these sections as including the partnership as an affiliate of the general partner when it is the very relationship between the (1) partnership and (2) the general partner and its affiliates that is being defined. Merely because these sections are susceptible to a nonsensical interpretation by substituting "partnership" for "affiliates" of the general partner does not create a fundamental inconsistency or ambiguity in the agreement. These arguments do not compel or support the investors' reading of the forum-selection provision or create an ambiguity with respect to whether the agreement's definition of "Affiliate" includes the partnership for purposes of the forum-selection clause.

Finally, the investors argue that the partnership and the general partner are not "Affiliates" because the general partner does not have ownership control of the partnership. Implicit in this argument is the investors' assumption that the term "control," as used in the definition of "Affiliate," is ambiguous. The investors contend that because control can mean management control, regulatory control, or ownership control, we must construe the term narrowly to include only ownership control. We do not agree.

■ Although the agreement defines an "Affiliate" in terms of control, "control" is not specifically defined.[4] But the agreement's failure to define control does not necessarily create an ambiguity. Here, nothing in the agreement supports the investors' contention that such a restrictive meaning of control was intended by the parties. Absent an ambiguity, undefined

specifically mention the advisor, the advisor's affiliates or employees, or the general partner's employees. We therefore fail to see how this provision supports their view that both clauses of the forum-selection provision apply only to parties to the agreement.

3. The investors acknowledge one section where the agreement expressly includes the general partner as an affiliate of the partnership. That section provides, in part, that the partnership shall bear the expenses of "... any indemnification (including any indemnification granted to any third-party placement agent or finder engaged by the Partnership or its Affiliates (including, for the avoidance of any doubt, the Parallel Funds, the Advisor, the General Partner or their Affiliates)) ...." The investors argue this section does not establish that the partnership and general partner are always affiliates. Rather, they contend it was clearly intended to expand the term "affiliates" solely for purposes of the indemnification provision.

4. The agreement defines "affiliate" as follows: "With respect to any Person, any Person directly or indirectly controlling, controlled by or under common control with such Person. Portfolio Companies shall not be deemed Affiliates of the Lehman Brothers hereunder."

contract terms are to be given their plain, ordinary, and generally accepted meanings. *See Twin City Fire Ins. Co.*, 840 A.2d at 628. Control is generally defined as "to exercise retraining or directing influence over; to have power over." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 496 (1993). Accordingly, we conclude "control" as used in the agreement is not limited to ownership control but also includes management control as exercised by the general partner over the partnership.

Because the forum-selection clause clearly and unambiguously requires suits against the partnership to be brought in either New York or Delaware, the trial court erred in denying the partnership's motion to dismiss. Accordingly, we conditionally grant the petition for writ of mandamus and order the trial court to: (1) vacate its orders denying the relator's motion to dismiss and denying relator's motion for reconsideration of the order denying the motion to dismiss and (2) to sign an order granting relator's motion to dismiss. The writ will issue only in the event the trial court fails to do so.